HUMPHRIES, Judge.
This is an action by the State of Louisiana through the Department of Highways to expropriate a piece of property located in a rural section of Natchitoches Parish. This action is brought under the provisions of R.S. 48:441 et seq. Suit was filed on April 9, 1974. Trial was held on January 15, 1975. Judgment was rendered by the trial judge on March 13, 1975 and a formal judgment was signed on April 18, 1975.
The trial judge found that the $1,800 deposited by the Department of Highways was adequate compensation to the landowner and denied an increase for the value of the land or any severance damage. We affirm.
The property is located on a rural state road designated as La. 480. This road runs in a northwest-southeast direction. The right of way for this road is 40 feet. The property is located approximately 3 miles northwest of Campti, Louisiana. Campti, Louisiana is located on U. S. Hwy. 71. The defendant-appellant acquired this property in two separate purchases of one-half interest each on October 6, 1971 and October 19, 1971. The total acreage of the property is just over 5 acres. This taking is 1.27 acres.
The subject property is triangular in shape. .The base of the triangle abuts the right of way of La. 480 a distance of 1,043 feet. The northern side of the triangle measures 739 feet and the eastern side measures 636 feet. The distance from the apex to the base is approximately 450 feet. The taking is a strip of land running from the apex of the triangle to its base. The width of the taking varies from 220 feet on Hwy. 480 to approximately 130 feet throughout a greater portion of the taking *853 and then widening out at the apex. After the taking the landowner is left with two triangular shaped pieces of property. The triangle to the north of the taking is 2.1 acres and the triangle to the south of the taking is 1.7 acres.
While the trial judge did not hand down written reasons for judgment, it is obvious that he accepted the testimony of the appraiser called by the Department of Highways, Mr. P. E. Futrell, Jr., over the testimony of the two appraisers called by the landowner, Mr. T. J. Stevens and Mr. Frank Crippen, Jr.
Defendant argues two major points for reversal. He contends that the trial judge was in error in accepting the testimony of Mr. Futrell because Mr. Futrell was not located in Natchitoches Parish. He also contends that the value found by the trial judge was in error because directly across La. 480 and the railroad track that parallels it, is the paper mill of Western Kraft.
In some cases the testimony of a local appraiser may be entitled to more weight than one who does not live in the vicinity of the taking. We observe that in this case this property is in an extreme rural area of Natchitoches Parish and there was no showing that either of the appraisers for the landowner were active in real estate business in this particular area. We must also observe that Mr. Futrell is from Rapides Parish, which adjoins Natchitoch-es Parish. There was no attempt to show that Mr. Futrell was not familiar with land values in Natchitoches Parish, even though he didn’t engage in the real estate brokerage there. On the contrary, the evidence is that he is quite familiar with land values in Natchitoches Parish. At the commencement of the trial when the attorney for the Department of Highways sought to lay the foundation to qualify Mr. Futrell as an expert he was interrupted by the trial judge who stated:
“I don’t want to cut you short, but Mr. - Futrell has been qualified numerous times in this court and I would be willing to accept him on the basis of what I already know about him.”
With regard to the argument that the trial judge was in error because this subject property was located across the highway from a paper mill, we observe that apparently the trial judge did take this into consideration. Certainly the appraiser for the Department of Highways took it into consideration. The value placed on the property by the appraiser for the Department of Highways was $1,000 per acre. The landowner had acquired the property about 2 and years before the filing of this suit and paid $600 per acre.
It is understandable why the trial judge did not accept the testimony of Mr. Stevens as the other sales that he used were not truly comparables. He used three sales, one of which was in Campti, Louisiana and the other two were in Clarence, Louisiana. He valued the subject property on a front foot basis as it ran along La. 480. He computed the “comparables” on a front foot basis likewise. His sale number 1 sold for a price of $63.61 a front foot. He adjusted this comparable downward $13.61 per front foot and arrived at a $50.-00 front foot for the subject property. His sale number 2 sold in 1970 for $63.33 a front foot. Because of the time element he adjusted this comparable up to $75.00 a front foot and because of its superior location downgraded the subject property by $25.00 a front foot and again arrived at a figure of $50.00 a front foot for the subject property. The third sale was in 1972 and reflected a sales price of $95.00 a front foot. He downgraded the subject property by $45.00 “due to circumstances surrounding the sale, its location and superior desireability to subject property.” After this adjustment again he concluded that the subject property had a value of $50.00 a front foot. It should be noted that there is no explanation in the record as to how he arrived at these exact figures for adjustments. He merely stated that *854 these adjustments were made because of time, surrounding circumstances or because of location.
This witness’ testimony reflects quite clearly that the sales that he used were not comparables. It was not explained why he went so far away from the subject property to seek for “comparables” when there were numerous sales in the area of the subject property.
The conclusions of the landowner’s other appraiser are just as difficult of understanding. He used three comparable sales to establish value. These sales were located in the vicinity of the subject property. The manipulations that this appraiser went through in converting acreage sales to front foot values can not be followed. On cross-examination this witness could not explain his adjustments because he had lost his file that contained his work up. Any expert is required to give reasons for his opinion. A lost file is not a valid substitute.
His comparable sale number 1 was on lyiarch 13, 1974 and was from Landford, et al to Western Kraft. It consisted of 14 acres and sold for $1,500 per acre. This land adjoined the land already owned by Western Kraft and is located across the highway from the subject property. If Western Kraft is to influence the market price of land certainly the greatest influence would be to land located nearest to its property. His comparable sale number 2 was on July 17, 1974. This was only 3 months after the filing of this suit. This land was similar in shape to the subject property, it was 5.87 acres of land, and in close proximity to the subject property and also fronted on Hwy. 480. This land sold for $766.61 per acre. This appraiser, in his brochure, stated that he gave more weight to this comparable because of its “similarity in shape and size to the subject property, and its close proximity, and the fact that it also fronts on Hwy. 480.” His comparable sale number 3 was on July 15, 1974. This sale was of 9 acres of land that sold for $400.00 per acre. In his brochure, he stated that this property was “reasonably close and bears a resemblance to the subject property.” This appraiser used the three above discussed sales and came to the conclusion that the subject property which consisted of 1.27 acres of land had a value of $11,443.50. As a matter of fact he placed a value of $900 on one acre of the property and $10,543.50 on the 0.27 acres.
Based upon the comparables used by Mr. Crippen the trial judge was more than fair in awarding $1,800 to the landowner.
Mr. Futrell discussed six comparables in his appraisal brochure and testimony. Two of his comparables were number 1 and number 2 of Mr. Crippen’s. Mr. Fu-trell found the value of the Smith property to be $1,000 per acre. For the amount of land taken this would give an award to the landowner of $1,270.00. Mr. Futrell allowed the sum of $30.00 for the little timber that was on the property taken as well as $30.00 for an old fence that was on the property. Also located on the property was an old, frame dilapidated house that was no longer being used. Mr. Crippen and Mr. Stevens saw this house and gave it no value at all. Mr. Futrell did not see the house as it had been removed by the time that he made his appraisal. Presumably, out of precaution, and in fairness to the landowner, he gave a value of $500 for the house. We find that the house had no value. The Highway Department did not appeal or answer the appeal and therefore the judgment can not be adjusted downward.
In addition to the two comparables mentioned above, Mr. Futrell used the sales whereby the defendant acquired the property. He also used a sale of property located about a mile from the subject property that was 40 acres in size and sold in *855 1973 at an average of $352.50 per acre. Another comparable that he used was a sale in May of 1973 of 16.51 acres of land at an average of $1,000 per acre. This property is located across the highway from the subject property and very near the subject property and is the property commonly referred to as the chip mill site. From the evidence, this chip mill was apparently erected to accommodate, compliment or be a source of supply for the Western Kraft paper mill.
A review of the history of the sales to Western Kraft will reveal that the value placed on the subject property by the trial judge takes into consideration this industrial improvement. The first purchase of land by Western Kraft was in November of 1972. It bought 205 acres of land at a price of $375 per acre. In August of 1973 it bought 55 more acres of land at a price of $375 per acre. In March of 1974 it purchased 14 acres and paid $1,500 an acre. This sale was discussed above. Pre-termitting any consideration of the old house but including the value given by Mr. Futrell of the small bit of timber and the old fence (neither of which do we consider to have any additional value) the award made to the landowner for his property is equal to $1,370 per acre.
Mr. Futrell considered, but did not find that any severance damage resulted. Mr. Crippen did not give any consideration to any severance damage. Mr. Stevens found severance damage but because of the rejection by the trial judge and this court of his opinion, we must find that the landowner has failed to prove that he suffered any severance damage.
If there is evidence in the record to support the judgment of the trial judge then the Court of Appeal must affirm that judgment. Canter v. Koehring Company, 283 So.2d 716 (La., Sup.Ct.1973). Not only is there some evidence to support the judgment of the lower court but the preponderance of the evidence supports his judgment.
For the above reasons, the judgment appealed from is affirmed. Defendant-appellant is cast for all costs in both courts.
Affirmed.